IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH PHILLIPS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:20-CV-1104-RP |
| WEATHERFORD US, LP, | § § | |
| Defendant. | § § | |

## ORDER

On September 17 and 20, 2021, the Court held a bench trial in this matter. (Dkts. 34, 35). The parties submitted their pretrial disclosures on September 2, 2021. (Dkt. 28). Having considered the evidence and testimony presented at trial, the arguments of counsel, and the governing law, the Court enters the following findings of fact and conclusions of law.

### I. Background

Plaintiff Joe Phillips ("Phillips") worked for Defendant Weatherford US, LP ("Weatherford") or its predecessor companies from January 1991 to June 5, 2019. (J. Br., Dkt. 28, at 7). On November 6, 2020, Phillips brought claims of age discrimination and retaliation based on his 2019 termination from his employment with Weatherford. (J. Br., Dkt. 28, at 1; Compl., Dkt. 1). In response to Phillips's complaint, Weatherford alleged in a motion to dismiss that the parties had previously entered into an arbitration agreement, pursuant to which Phillips agreed to arbitrate all matters arising out of his employment. (Mot., Dkt. 6, at 1–2). The Dispute Resolution Program ("DRP"), which Weatherford alleges applies to the present dispute, states that it is the exclusive means for employees to resolve workplace disputes and, that under the DRP, all disputes arising out of an employee's employment with Weatherford must be resolved through arbitration under the DRP instead of through trial before a court. (J. Br., Dkt. 28, at 5, 8).

1

The parties stipulate that in 2016, three years prior to Phillips's termination, Weatherford sent, via first-class mail, a notice to its employees that it was implementing the DRP. (J. Br., Dkt. 28, at 1). The notice was sent to each employee's home address of record. (*Id.*). The DRP stated it would "govern all legal disputes between Weatherford and employees of any Weatherford company in the United States . . . The DRP is a condition of your employment and by continuing (or accepting) employment after January 1, 2017, you are in agreement to be bound by the DRP." (*Id.*). The parties agree that Weatherford submitted the DRP Mail Out packets to the Weatherford Mail Center, operated by Ricoh Managed Services ("Ricoh"), with a spreadsheet of employee home addresses, including Phillips's. (*Id.* at 2, 5, 8). Ricoh performed the bulk mailing of the DRP notice on November 14, 2016. (*Id.* at 2). Ricoh implements customary practices to complete mass mail outs through the United States Postal Service, including:

> (a) The Mail Center receives from Weatherford personnel the document or file to be mailed and a spreadsheet identifying the addressees and addresses.
> (b) The Mail Center prints the document for the number associated with the mailing list.
> (c) The Mail Center generates addressed envelopes from the mailing list with Mail Merge software through the Mail Center's printers.
> (d) The Mail Center conducts a spot check inspection to verify that the envelopes bear the correct addresses and conducts a final count to ensure all envelopes have been printed.
> (e) The Mail Center then stuffs the addressed envelopes with the printed document file.
> (f) The Mail Center runs the stuffed, addressed envelopes through the mail meter which stamps the envelopes with the appropriate postage.
> (g) The Mail Center conducts another spot check inspection to ensure the envelopes are properly metered.
> (h) The Mail Center then loads the metered envelopes into boxes which the staff then provides to the United States post office driver who makes daily pickups at the headquarters location.

(*Id.* at 4, 7–8). Phillips alleges he never received notice of the DRP and thus should not be bound by its terms in litigating this employment dispute. (J. Br., Dkt. 28, at 2). Weatherford's associate counsel, David Morris, received the DRP packet at his home address, while Drew White, an

employee of Weatherford during the relevant time period, denies receiving the DRP mailout. (*Id.*). Both parties agree that Weatherford never received a return of Phillips's letter as undeliverable. (*Id.* at 2, 6, 9).

On April 27, 2021, the Court denied Weatherford's motion to dismiss. (Order, Dkt. 14). The Court found that Phillips had alleged sufficient facts to raise a fact issue regarding his receipt of the DRP notice such that he could proceed to trial. (*Id.* at 5–6). On May 28, 2021, Weatherford filed counterclaims against Phillips, asserting breach of contract, tortious interference with business relationships, violation of trade secrets law, defamation, and business disparagement. (Countercl., Dkt. 19). Phillips filed a motion to dismiss these counterclaims on June 21, 2021. (Mot., Dkt. 23). That motion remains pending in anticipation of the Court's final ruling on the validity of the DRP. Should the Court determine the DRP applies to the present dispute, the allegations in Phillips's motion to dismiss would be more appropriately addressed during arbitration. The Court held a bench trial for the presentation of evidence on the DRP issue on September 17 and 20, 2021. (Dkts. 34, 35).

## II. Summary of the Evidence

During the trial, the Court heard testimony from Kelly Lawrence, Gerald Lewis, Dean Graves, Drew White, and Phillips. Weatherford also entered multiple exhibits into evidence.

### A.     Kelly Lawrence

Kelly Lawrence ("Lawrence") is currently Weatherford's corporate communications manager and worked in Weatherford's communications department at the time of the DRP mailing in 2016. (Day 1 Hr'g Tr. at 4). At that time, it was her job to assist with the rollout of any company policy changes that needed to be communicated with employees. (*Id.*). Lawrence thus assisted with the rollout of the DRP notice to Weatherford employees. (*Id.* at 5). Lawrence testified that as part of that rollout, Weatherford sent an email about the DRP to all U.S.-based employees and mailed

3

packets about the DRP to U.S. employees' homes. (*Id.* at 6). Lawrence obtained a contact list of employees in the United States through Weatherford's human resources department. (*Id.* at 9, 12; Exh. D-3). Holly Young ("Young"), another member of the communications team, forwarded this list to Ricoh at Lawrence's request. (Day 1 Hr'g Tr. at 16–17, 23; Exh. D-10). Ricoh received the list. (Day 1 Hr'g Tr. at 18; Exh. D-20). Lawrence testified that she received the DRP notice at her home address. (Day 1 Hr'g Tr. at 19). She also testified that the envelopes had a return address to Weatherford's corporate office so that if there was any issue with delivery, the package could be returned to Weatherford and another manner could be employed to make the employee aware of the DRP. (*Id.* at 19). Lawrence also testified that an email about the DRP was sent to the standard email distribution list for all U.S. employees. (*Id.* at 20–21; Exh. D-12).

Lawrence further testified that the DRP rollout was conducted in line with previous successful program rollouts, and that although Weatherford had not previously rolled out arbitration agreement information by mail, the company had previously mailed employees information about employee benefits. (Day 1 Hr'g Tr. at 24–25). She stated that the decision of whether to have employees sign something to indicate receipt of the DRP notice was outside of the scope of her employment at the time. (*Id.* at 25).

    **B.**    **Gerald Lewis**

Gerald Lewis ("Lewis") was the Ricoh site manager for Weatherford beginning in 2016. (*Id.* at 31–32). Lewis testified that he was copied on the email exchange that included an Excel attachment listing 7,328 Weatherford employees and their addresses that were to receive the DRP mailout. (*Id.* at 35–36; Exh. D-4). Lewis noted that in the email, (Exh. D-4), another Ricoh employee working for Weatherford stated that the mailing list should include 7,837 employee names and addresses. (*Id.*). Lewis testified that the 7,387 number may have been based on a previous calculation of the number of employees that would receive the mailout, but that the last-received Excel file

would have controlled the mailing, and the last Excel file Ricoh received contained only the 7,328 employee names and addresses. (Day 1 Hr'g Tr. at 35–36, 43). The spreadsheet with 7,328 names included Phillips's name and address. (Exh. D-4).

Lewis also testified about the process Ricoh goes through to transfer names from a spreadsheet onto mailing envelopes. He stated that Ricoh does a "mail merge" from the Excel file onto the labels that are placed on the envelopes and that he has no reason to believe that a name on the Excel spreadsheet would fail to make it onto an envelope. (Day 1 Hr'g Tr. at 36, 39–40). He also testified that Ricoh rarely gets undelivered mail returns, which indicates to him that mailing errors are infrequent. (*Id.* at 44). Lewis stated that tracking whether intended recipients actually receive the mail is an option, but it is more costly and Ricoh only employs this method when the customer asks for it. (*Id.* at 44–46). He could not recall if this option came up in discussions with Weatherford. (*Id.*). Finally, Lewis testified that he searched for other mailing lists in his email related to the DRP mailout in November 2016 and found none. (*Id.* at 47–48).

### C. Dean Graves

Dean Graves ("Graves") was previously in-house counsel for Weatherford during the mailout of the DRP. (*Id.* at 49). As in-house counsel, he oversaw the implementation of the mailout. (*Id.* at 60). He testified that his address was correct on the list of 7,328 names and addresses provided to Ricoh and that he received the DRP packet at his home address. (*Id.* at 61). He also testified that there were no discussions about including a requirement that employees affirm that they received the DRP mailout because Weatherford had previously had success in mailing out important documents, such as health plan information, via first-class mail without confirmation of receipt. (*Id.* at 63–64). Graves did not recall seeing Phillips's name on a returned DRP packet. (*Id.* at 64).

### D.   Drew White

Drew White ("White") was a Weatherford employee from 2010 to 2019 and was a manager in 2016 during the DRP mailout. (*Id.* at 76–77). White testified that that he did not recall receiving any emails or training regarding the DRP. (*Id.* at 77–80). He also testified that he had received mail from Weatherford in the past and generally saved important documents, but he did not recall receiving the DRP notice, nor did he have it in his possession when he searched in anticipation of testifying at this trial. (*Id.* at 82–83).

### E.   Joe Phillips

Phillips testified that he had never seen the DRP mailout prior to the present lawsuit. (Day 2 Hr'g Tr. at 3–4). However, he did confirm that his address in 2016 was on the mailing list used by Ricoh to mail out the DRP notices. (*Id.* at 14; Exhs. D-3, D-4). Phillips had previously received employment-related mail at his house, such as human resources paperwork, paystubs, and W-2s. (Day 2 Hr'g Tr. at 21). However, he stated that he had previously had issues with Weatherford mailouts, such as empty envelopes arriving at his house, which he had reported to human resources. (*Id.* at 4). Phillips also testified that he did not keep all documents related to his employment, but that before he threw out employment documents, he verified that they were not documents he would need in the future. (*Id.* at 5, 25–27). He stated that, having read the DRP notice in anticipation of trial, it was a document he would have saved had he received it. (*Id.* at 36). He also stated he did not receive emails about the DRP. (*Id.* at 7). None of the employees he supervised ever asked him about the DRP packet. (*Id.* at 33).

## III. Discussion

When considering whether a valid arbitration agreement exists between the parties, the court generally applies "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[T]o prove a modification of an at will

6

employment contract, the party asserting the modification must prove two things: (1) notice of the change; and, (2) acceptance of the change." *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986). "To prove notice, an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms." *Id.* "[A]cceptance need not be anything more complicated than continuing to show up for the job and accept wages in return for work. "[W]hen the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 203 (5th Cir. 2016) (citing *Hathaway*, 711 S.W.2d at 229).

The parties do not dispute that Phillips continued working for Weatherford after the DRP notice was mailed out to Weatherford employees in 2016. Therefore, the primary issue in this case is whether Phillips received notice of the change to his employment terms. "Direct testimony that a letter was properly addressed, stamped, and mailed to the addressee raise[s] a presumption that the letter was received by the addressee in due course." *Texaco, Inc. v. Phan*, 137 S.W.3d 763, 767 (Tex. App.—Houston [1st Dist.] 2004, no pet.). "The matters of proper addressing, stamping, and mailing may be proved by circumstantial evidence, such as the customary mailing routine of the sender's business." *Id.* "[A] sworn statement is credible evidence of mailing for the purposes of the mailbox rule." *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420 (5th Cir. 2007). Further, the Fifth Circuit has recognized that "[p]lacing letters in the mail may be proved by circumstantial evidence, including customary mailing practices used in the sender's business." *Id.* (citing *Wells Fargo Business Credit v. Ben Kozloff, Inc.,* 695 F.2d 940, 944 (5th Cir. 1983)).

At the motion to dismiss stage, this Court held that Weatherford's evidence regarding the DRP mailout was sufficient to create the rebuttable presumption of receipt. (Order, Dkt. 14, at 4). The Court once again holds that Weatherford's trial evidence raised this presumption. At trial, the

7

Court heard testimony from multiple Weatherford employees and contractors about the procedures that the company followed when executing the DRP mailout. Specifically, the Court heard from Lawrence, Weatherford's corporate communications manager, about how Lawrence obtained a contact list of employees in the United States through Weatherford's human resources department. The list included Phillips's name and correct address. Young, another member of the communications team, forwarded this list to Ricoh at Lawrence's request. Ricoh received the list and followed its customary practices in conducting the mailout. Both Lawrence and Weatherford's previous in-house counsel, Graves, testified that they received the DRP notice at their home addresses. This evidence is sufficient to raise the presumption that the DRP mailout was sent to Phillips's home. *See Phan*, 137 S.W.3d at 767 ("Although there was no direct evidence of actual mailing, the clerk's description of the customary mailing procedures relating to the mailing of notices allowed the presumption of receipt in due course to arise."); *cf. Tucker v. Conn Appliances, Inc.*, No. 4:09-CV-3630, 2010 WL 2710693, at *4 (S.D. Tex. July 6, 2010) (finding lack of evidence that a letter was sent where the defendant did not "offer a shred of evidence specific to [plaintiff]. Instead, it aver[red] generally that 'all employees' received relevant materials").

Thus, the Court turns to the next question, which is whether Phillips produced sufficient evidence to rebut the presumption of receipt. In denying Weatherford's motion to dismiss, (Dkt. 6), this Court found that Phillips had alleged sufficient facts to create a fact issue as to notice. (Order, Dkt. 14, at 5). Specifically, the Court noted that Phillips had offered sworn testimony from another Weatherford employee who stated he likewise had not received the DRP notice in the mail, and Phillips pointed out that there were discrepancies in Weatherford's evidence as to how many employees were on the DRP mailing list. (*Id.*). However, while this evidence was sufficient to create a fact issue at the motion to dismiss stage, at trial, "[t]he presumption of receipt is overcome conclusively only when the evidence tending to support the contrary inference is conclusive, or so

8

clear, positive, and disinterested that it would be unreasonable not to give effect to it as conclusive." *Phan*, 137 S.W.3d at 767 (citing *Employers' Nat. Life Ins. Co. of Dallas, Tex. v. Willits,* 436 S.W.2d 918, 921 (Tex. App.—Amarillo 1968, writ ref'd n.r.e.) and *Southland Life Ins. Co. v. Greenwade*, 159 S.W.2d 854, 857 (Tex. 1942)).

The Court finds that Phillips's evidence is not "conclusive, or so clear, positive, and disinterested that it would be unreasonable not to give effect to it as conclusive." *Id.* Phillips's trial evidence that he did not receive the mailout included his own testimony that he did not receive it and that he could not find the document when he searched for it in advance of trial. However, as the standard expressed in *Texaco* states, a witness's interest in the outcome of the case can weigh against their ability to rebut the presumption of receipt, and Phillips is undoubtedly an interested witness. Phillips also relies on the testimony of White, who stated that he likewise did not receive the DRP mailout and could not find the document when he searched. However, while this evidence was sufficient to create a fact issue at the motion to dismiss stage, (Order, Dkt. 14 at 5; *see Custer*, 503 F.3d at 421), the Court finds that it does not rise to the level of "conclusive," "so clear," and "positive" of Phillips's own lack of receipt to prevail at trial, especially given the testimony of both Lawrence and Graves that they indeed received the mailout.

The other evidence this Court found to create a fact issue at the motion to dismiss stage was the discrepancy in the total number of DRP notices Weatherford mailed out to employees. (Order, Dkt. 14, at 5). However, at trial, Weatherford's Ricoh site manager testified that the spreadsheet Ricoh relied upon to complete the mailing, which listed the names and addresses of the employees who would receive the mailout, had 7,328 entries and included Phillips's name and correct address at the time. Finally, the only additional evidence Phillips offered at trial to rebut the presumption of receipt was that he had, in the past, had issues with Weatherford mailouts that he reported to human resources, such as empty envelopes arriving at his house. However, based on the facts in this case,

9

the Court does not find this evidence to rise to the level of "conclusive," "so clear," and "positive" that Phillips did not receive the mailout on this occasion, especially considering his testimony that he had successfully received other mail at his house from Weatherford on prior occasions.

The Court finds that Texas case law supports its conclusion in this case. For example, in *Kelly v. Brenham Floral Co.*, the plaintiff alleged he had not received notice of a trial setting at which he was required to appear. No. 01-12-01000CV, 2014 WL 4219448, at *2 (Tex. App.—Houston [1st Dist.] Aug. 26, 2014, no pet.). In determining that the plaintiff had not successfully rebutted the presumption of receipt, the Texas Court of Appeals in Houston relied on evidence that the pretrial order was never returned to the clerk's office as undelivered and that the plaintiff had previously received mail from the Court at the same address the Court used to send out the pretrial order. (*Id.* at *3). Here, Graves testified that he watched for any returns of the DRP mailout as undeliverable and did not receive a return from Phillips, and Phillips testified that he had previously received mail from Weatherford at his home address.[1]

While the Court ultimately holds that Phillips has not successfully rebutted the presumption of receipt, the Court notes that reasonable jurists could differ as to this outcome. The Fifth Circuit itself has acknowledged that its case law is unclear as to what "precise amount of evidence [is] required to rebut the mailbox rule's presumption of receipt, and hence, notice for the purpose of establishing an agreement to arbitrate." *Trammell*, 776 F. App'x 208, 210–11 (5th Cir. 2019) (discussing the evidence sufficient to rebut the presumption of receipt at the summary judgment stage). While there is some guidance, albeit limited, from Texas state courts about the types of evidence a court may consider when a party challenges the presumption of receipt at trial, where the

---

[1] Lawrence also testified that Weatherford emailed employees regarding the DRP. The Court need not address whether the email was sufficient to provide notice as the presumption that Phillips received a physical copy of the DRP notice in the mail is an adequate basis to hold that he had notice of the DRP.

10

burden is higher than in a dispositive motion, guidance from the Fifth Circuit is virtually nonexistent.

Without such guidance, the idea that the mailbox rule's presumption of receipt is "rebuttable" is rendered meaningless. Indeed, this Court is hard pressed to find binding precedent where the presumption of receipt has been successfully rebutted at the trial stage. Lacking direct precedent, this Court holds that the presumption has not been rebutted in this case but notes that the Fifth Circuit may well disagree and determine that the evidence in this case is sufficient to rebut the presumption of receipt. The Court sympathizes with litigants like Phillips who must attempt, in essence, to prove that a certain event *did not* occur without examples of what evidence would be sufficient to do so.

Finally, while the Court seeks to apply the mailbox rule doctrine as it is conveyed in binding Fifth Circuit precedent and applicable Texas case law, the Court believes the mailbox rule promotes poor public policy. By implementing a presumption of receipt that is nearly impossible to rebut at trial, the law of this Circuit allows employers to fundamentally change the rights of their employees without ensuring that employees actually receive notice of these changes. It is the hope of this Court that this power imbalance will, at some point, be rectified and employees—like Phillips, who worked for Weatherford for nearly 30 years before his termination—will be afforded an honest chance to challenge the presumption that they received notice of such significant changes of their rights as employees.

## IV. Conclusion

Based on the these findings of fact and conclusions of law, **IT IS ORDERED** that judgment be entered in favor of Weatherford.

**IT IS FURTHER ORDERED** that Phillips's Motion to Dismiss, (Dkt. 23), is **DISMISSED AS MOOT**.

**SIGNED** on January 12, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE